(May 10, 1904.)

## STATE v. BLAND.

[76 Pac. 780.]

COMMUNICATIONS WITH JURY—JUDGE IN JURYROOM—INSTRUCTIONS—
DELIVERING LETTER TO JUROR.

1. Where a judge, after the jury have retired for deliberation, goes to the juryroom upon request of a juror, and in the absence of defendant and his counsel, and has a conversation with the jury or a juror relative to the case, or with reference to their verdict, such conduct will constitute error for which a new trial will be granted.

2. All communications between judge and jury should take place in open court, and in the presence of the parties litigant or their counsel.

3. An instruction in the language of section 7697, Revised Statutes, as follows: "You are further instructed that the distinction between an accessary before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessary than are required in an indictment against a principal,'' is not error.

4. It is error to deliver a sealed letter to a juror after the case has been submitted to the jury.

(Syllabus by the court.)

APPEAL from the District Court in and for the County of Shoshone.   Honorable Ralph T. Morgan, Judge.

Defendant was convicted of the crime of manslaughter, and from the judgment and an order denying his motion for a new trial, appeals.   Reversed.

Henry P. Knight, for Appellant.

The court erred in giving to the jury instruction No. 10, requested by the state set forth in the opinion.   This instruction is nothing other than a statutory rule of pleading in criminal cases.   It does not enlighten, or tend to enlighten, the jury upon a question of evidence, presumptions, proofs, or any other subject within the province of the deliberations of the jury, and should not have been given.   (1 Bishop's New Criminal Procedure, art. 978.)   After a careful examination of all the available authorities, we regard the action of the trial judge in appearing before the jury during their deliberations, and without the presence of, or notification to, the defendant or his attorneys, as so flagrant and serious an error that we apprehend the supreme court will not probably care to consider any other assignment, and we, therefore, present the following: 1. In felony the accused must be present at every stage of the trial.   (1 Bishop's New Criminal Procedure, art. 273; *Hopt v.*

*Utah,* 110 U. S. 574, 4 Sup. Ct. Rep. 202, 28 L. ed. 262.)
The giving of instructions to the jury is an important part of
the trial, and it is irregular and manifestly error for the court,
in the absence of the plaintiff, to instruct the jury. *(Camp-
bell v. Beckett,* 8 Ohio St. 211; 1 Bashfield's Instructions to
Juries, art. 179; *Chicago etc. R. Co. v. Robbins,* 159 Ill. 598,
43 N. E. 332; *Quinn v. State,* 130 Ind. 340, 30 N. E. 300;
*Low v. Freeman,* 117 Ind. 341, 20 N. E. 242; *Hopkins v.
Bishop,* 91 Mich. 328, 30 Am. St. Rep. 480, 51 N. W. 902;
*Fox v. Peninsular White Lead etc. Works,* 84 Mich. 676,
48 N. W. 203; *Snyder v. Wilson,* 65 Mich. 336, 32 N.
W. 642; *Watertown Bank etc. Co. v. Mix,* 51 N. Y. 561;
*Taylor v. Betsford,* 13 Johns. (N. Y.) 487; *State v. Wroth,*
15 Wash. 621, 47 Pac. 106; *Jones v. State,* 26 Ohio St. 208;
*Hulse v. State,* 35 Ohio St. 429; *Maurer v. People,* 43 N. Y.
1; Rev. Stats. 1887, sec. 7903.) Even though the conversa-
tion had taken place in the courtroom, from the bench, without
the presence of the defendant, and his counsel, it would have
been error. *(People v. Trim,* 37 Cal. 274; *Smith v. State,* 51
Wis. 621, 37 Am. Rep. 845, 8 N. W. 410; *People v. Hersey,*
53 Cal. 574; *Territory v. Lopez,* 3 N. Mex. 104, 2 Pac. 364;
*Ellerbee v. State,* 75 Miss. 522, 22 South. 950, 41 L. R. A. 569.)
The record discloses another error, to which we desire to call
the court's attention. A letter was delivered to juror Braham
without the consent of the defendant and without his knowl-
edge, after the jury had retired to deliberate of their verdict.
This was reversible error. *(State v. McCormack,* 20 Wash. 94,
54 Pac. 764.)

Attorney General John A. Bagley and R. N. Dunn, County
Attorney, for the State.

As stated at the outset, appellant appears to rely solely upon
the fact that while the jury were deliberating upon their ver-
dict a communication took place between the trial judge and
the jury, neither the defendant nor his counsel nor counsel for
the state being present. We submit that the only evidence in
the record as to what took place between the judge and the
jury is contained in the affidavit of Judge Morgan. The elabor-

ate statements contained in the affidavits filed on behalf of the defendant as to what passed between the judge and the jury are simply hearsay and are denied by Judge Morgan, except as to the questions and answers admitted in his affidavit. While this communication was an irregularity, it seems to us that it was not of so serious a character as contended for by appellant; neither are the authorities so unanimous in support of his view as stated in appellant's brief. (*Goldsmith v. Solomons,* 2 Strob. 300.) Where no error appears in the record prejudicial to the defendant, the judgment will be affirmed. (*State v. Hurst,* 4 Idaho, 345, 39 Pac. 554; *State v. Hardy,* 4 Idaho, 478, 42 Pac. 507; *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506.) A reversal cannot be predicated upon harmless error. (*State v. Rice,* 7 Idaho, 762, 66 Pac. 87; *State v. Corcoran,* 7 Idaho, 220, 61 Pac. 1035, citing *State v. Reed,* 3 Idaho, 754, 35 Pac. 706.) While some of the authorities cited by appellant, notably *State v. Wroth,* support appellant's contention, many of them do not, for the reason that the facts surrounding those decisions were so entirely different from the facts in this case. (*Hopt v. Utah,* 110 U. S. 574, 4 Sup. Ct. Rep. 202, 28 L. ed. 262; *Jones v. State,* 26 Ohio St. 208; *Hulse v. State,* 35 Ohio St. 429; *Ellerbee v. State,* 75 Miss. 522, 22 South. 950, 41 L. R. A. 569; *Maurer v. People,* 43 N. Y. 1; *Gandalfo v. State,* 11 Ohio St. 114; *Tilley v. Montelius Piano Co.,* 15 Colo. App. 204, 61 Pac. 483; *McCutcheon v. Loggins,* 109 Ala. 457, 19 South. 810; *State v. Borchert,* 68 Kan. 360, 74 Pac. 1108; *People v. Cox,* 76 Cal. 281, 18 Pac. 332; *People v. Leary,* 105 Cal. 486, 39 Pac. 24.) New trial cannot be granted on any other grounds than those enumerated in section 7952, Revised Statutes of Idaho. (*State v. Davis,* 6 Idaho, 159, 53 Pac. 678; *State v. McGraw,* 6 Idaho, 635, 59 Pac. 178.)

AILSHIE, J.—In this case the defendant was on the fifth day of June, 1903, indicted by the grand jury of Shoshone county charged with the murder of one Emma R. Aubrey, and the offense was alleged to have been committed by the defendant aiding and abetting one Arthur K. Goode in killing and murdering the deceased. The case came on regularly for trial in July following and the evidence both for the state and the

defendant was submitted and the jury were instructed by the court. On the evening of July 31, 1903, the jury were sent to the juryroom under the charge and control of a sworn bailiff. At about 10 o'clock the following morning, August 1st, they returned into court and rendered their verdict as follows: "We, the jury in the above-entitled action, find the defendant, Joseph L. Bland, guilty of the crime of manslaughter, with the utmost mercy of the court."

The district judge thereafter sentenced the defendant to a term of ten years in the state penitentiary. From the judgment and the order denying defendant's motion for a new trial this appeal has been prosecuted. Eleven assignments of error are presented to this court as grounds for a reversal of the judgment. Counsel for the appellant practically relied upon the eleventh assignment at the argument of this case, and we therefore give that our first consideration. Upon the motion for a new trial the defendant presented his own affidavit and that of his attorney, Henry P. Knight, setting forth the fact, among other things, that without the knowledge or consent of the defendant or his counsel, the trial judge, in response to the request from a juror, appeared in the juryroom at about the hour of 9 o'clock on the morning of August 1st, and prior to the finding of the verdict, and had some conversation with one or more of the jurors, "and that at that time the said judge was asked by one of the said jurors whether or not there were two degrees of manslaughter, and whether or not the said jury could find the defendant guilty of manslaughter in the second degree; that thereupon the said judge answered that there was no such thing as manslaughter of the second degree, but that the jury could find the defendant guilty of manslaughter and recommend him to the mercy of the court. That the said R. T. Morgan [the trial judge] was further questioned by one of the jurors as to whether the jury could fix the penalty for manslaughter, and that he answered that they could not, but that they could recommend him to the mercy of the court. That the said juror further asked what was the lightest punishment for manslaughter, and that he was answered by the said judge that the punishment was imprisonment in the state penitentiary

for a period of not less than one year and not exceeding ten years."

It was also alleged in the affidavits that several jurors had made substantially the same statement as to what occurred in the juryroom, but that each of them refused to make an affidavit to that effect for personal, business and social reasons, and that neither the defendant nor his counsel discovered what had taken place until after the rendition of the verdict. In reply to these two affidavits the trial judge filed his own affidavit, and we here quote in full all references made in the judge's affidavit to this particular transaction. "Affiant further says that the only communication between affiant and the jury in said case was when a member of said jury asked affiant if the crime of manslaughter was divided into degrees, and affiant told him it was not; and that said juror then asked affiant if the jury could recommend the defendant to the mercy of the court, and affiant told him they could do as they liked about it."

It stands as an admitted fact in this case that prior to the finding of the verdict by the jury the trial judge, in the absence of defendant and his counsel, had some kind of a conversation with at least one member of the jury. The appellant contends that it is reversible error for the trial judge to go to the juryroom or to have any communication whatever with the jury except in open court. In support of this position we are cited to a long and uniform line of authorities. Mr. Spelling, in his very recent work on New Trial and Appellate Practice, volume 1, section 44, says: "Communications between judge and jury are very jealously scrutinized. Any information or suggestions imparted by the trial judge to the jury otherwise than in the manner prescribed by statute, or through approved channels and by established methods, will usually be held ground for a new trial without regard to circumstances or motives, unless the absence of prejudice be obvious."

Blashfield in his Instructions to Juries, volume 1, section 179, collects the authorities on the subject and says: "After the jury have retired the judge should not go to the juryroom to communicate with the jury, nor should he send additional instructions by the hands of an officer—all communications should be

made in open court. . . . . The judge has no more right in the juryroom while the jury are deliberating than any other person, even though he holds no communication with them, and if he does so, the honesty of his intentions in no way lessens the impropriety of such action."

Among the strongest cases supporting the position taken by appellant is that of *State v. Wroth,* 15 Wash. 621, 47 Pac. 106, where Justice Gordon, speaking for the court, said: "In the discharge of his official duty, the place for the judge is on the bench. As to him the law has closed the portals of the juryroom and he may not enter. The appellant was not obliged to follow the judge to the juryroom in order to protect his legal rights, or to see that the jury was not influenced by the presence of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge had no right to be, and in regard to which no official record could be made."

One of the early cases in this country laying down this rule in emphatic language is that of *Sargent v. Roberts,* 1 Pick. 337, 11 Am. Dec. 185, where it was observed: "The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object. . . . . It is better that everybody should suffer inconvenience, than that a practice should be continued which is capable of abuse, or, at least, of being the ground of uneasiness and jealousy."

The doctrine is ·announced to the same effect in *Read v. Cambridge,* 124 Mass. 567, 26 Am. Rep. 690; *Taylor v. Belsford,* 13 Johns. 467; *Chicago etc. R. R. Co. v. Robbins,* 159 Ill. 598, 43 N. E. 332; *Johnson v. State,* 100 Ala. 55, 14 South. 627; *Watertown Bank etc. Co. v. Mix,* 51 N. Y. 558; *Galloway v. Corbitt,* 52 Mich. 460, 18 N. W. 218.

Our attention has been called by the attorney general to *Goldsmith v. Solomons,* 2 Strob. 296, where the supreme court of South Carolina, in an early opinion, held that there was no error in the trial judge having a private communication with the jury. The same rule seems to prevail in New Hampshire.

(*Allen v. Aldrich,* 29 N. H. 63.) It may be safely said that the South Carolina court has gone to the extreme limit in holding that there is no error in the trial judge holding private communications with the jury, while the Washington court has gone to the other extreme in holding that any communications whatever, or even an appearance by the judge in the juryroom, is reversible error.

Our special attention has been called to the case of *State v. Borchert,* 68 Kan. 360, 74 Pac. 1108, wherein the supreme court of Kansas, in January of this year, held that a written communication which passed between the judge and jury after they had retired to the juryroom was not such error as would justify a reversal of the judgment. That court seems to have taken a middle ground between the two extremes as presented by the foregoing authorities, and held that since they had before them the document itself, which showed upon its face everything that transpired between the judge and jury, and since that communication contained nothing which could have possibly prejudiced the rights of the defendant, the court would therefore not be justified in interfering with the judgment. This is substantially what was said by the supreme court of Massachusetts in *Mosely v. Washburn,* 165 Mass. 417, 43 N. E. 182, to which our attention is called by the attorney general.

Mr. Hayne, in his work on New Trial and Appeal, volume 1, section 39, after reviewing the authorities on this question, lays down what he conceives to be the better rule: "That where the losing party shows that some private communication was made by the judge to the jury, it devolves upon the successful party to show what the communication was, and that unless he does this the verdict must be set aside; that where it clearly appears what the communication was, then if it be of such a character that it may have affected the jury, the verdict must be set aside; but that if the court can see from the record that it could not have had any effect, the verdict should stand."

After a careful review of the authorities we are satisfied that upon the record before us this case must be reversed on account of the communication having taken place between the

trial judge and one or more jurors in the absence of the defendant and his counsel. While we are not willing to say, at this time, that any and all communications which might possibly take place between a trial judge and jury in the absence of the defendant should work a reversal of the judgment, still we are strongly persuaded that such communications should never take place, and that the interests of justice and the confidence of the public and parties litigant in legal proceedings, and the preservation of the recognized and established rules of practice and procedure demand that all communications between judge and jury take place in open court. The judge of the court is a *judge* everywhere, whether upon the street, in the juryroom or in open court, but he is not a *court* except in the courtroom, and we know of no more reason why he should be permitted in the juryroom than any officer of the court or other person. The oath taken by the officer who has the jury in charge makes no exception for anyone (Rev. Stats., sec. 7887), and the only place it contemplates the judge seeing or communicating with the jury is when the officer has "returned them into court."

The danger of such a practice is illustrated by this case. The only way in which a record can be made as to what occurred between the judge and jury in such case is by affidavit; but here it transpires that the judge of the court must actually make affidavits in his own court to show what has taken place between himself and the jury, while in fact he is provided with an official stenographic reporter whose duty it is to make a record of all the proceedings. But the stenographer makes his records in the courtroom and cannot be in the juryroom, hence this unsatisfactory way of making a record of what actually occurred.

Section 7903 of the Revised Statutes was undoubtedly enacted for the purpose of meeting the requirements of just such emergencies as arose in this case. It is there provided that in case of any disagreement among the jury, after they have retired for deliberation, that they shall be returned into court and that "upon being brought into court, the information required must be given in the presence of, or after notice to, the district attorney, and the defendant or his counsel, or after they

have been called." The legislature has therefore provided a place and the manner for the exchange of communications between the court and jury after the case has been submitted to the jury. It is fair to observe that these incidents and communications generally arise out of a desire on the part of the trial judge to facilitate and expedite the trial of cases pending before him without any purpose or intention of unfairness in the least, but when the issue arises as to the legal right and propriety of so doing, it should be squarely met and disposed of on its legal merit alone.

It is too often that refuge from the results of positive violation of statutory provisions and settled rules of practice is taken behind the much abused excuse that the error was not prejudicial to any substantial right of the defeated party. That rule is often eminently just and salutary, but should not be carried to the extent of holding that no matter how a conviction was secured it will not be reversed where it really appears that the defendant ought to have been convicted. This kind of doctrine was the father of lynch law and is the only argument for mob violence. According to this doctrine, if a man deserved to be hung it would make no difference whether it be done by due course of law or in violation of law. The law has its best observance and commands the highest respect where its sanctity and inviolability in all its provisions is uniformly recognized and enforced by the courts. The interest of the people at large in maintaining its administration above reproach must always equal, if not exceed, the private or personal interest of any litigant. (*Ellerbee v. State,* 75 Miss. 522, 22 South. 950, 41 L. R. A. 569.)

The appellant complains of the refusal of the court to give a number of instructions requested on the part of the defendant, and also urges as error the giving of certain instructions requested by the state; but since the evidence given upon the trial has not been brought to this court upon appeal, and we are not informed as to the nature or character of the evidence given on the part of the state, nor of the defense made by the defendant, this court cannot pass upon all these assignments.

Under the state of the record here we can only pass upon the ruling of the court in giving one instruction asked by the state.

The defendant complains of the giving by the court of instruction No. 10 requested by the state. That instruction is as follows: "You are further instructed that the distinction between an accessary before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, shall be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessary than are required in an indictment against a principal."

This instruction is in the identical language of section 7697 of the Revised Statutes, and certainly could in no wise injure or prejudice the defendant. We fail to see, however, the necessity for the giving of such an instruction, since that statute is made rather for the direction of the court in the consideration of pleadings than for the instruction of the jury upon issues of fact.

As before observed, we express no opinion as to whether the other requests and instructions given were correct or incorrect in this particular case, for the reason that we are not informed as to the nature or character of the evidence submitted in the case, and standing as abstract principles of law, we cannot say the rulings of the court thereon were error upon any and every possible theory of the case.

Appellant also complains of the action of the court in delivering to the juror, Nelson C. Braham, a letter after the final submission of the case to the jury and prior to their finding a verdict. It appears from the respective affidavits filed on motion for a new trial that after the case had been closed and before the jury retired, a sealed letter was brought into the courtroom addressed to the juror Braham, and that the judge showed the letter to the juror, and after an examination of the address the juror said that he believed it to be from his mother in law concerning his wife's sickness, and the judge thereupon

delivered the letter to the juror. It is claimed by the affidavits on the part of the state that one of the attorneys for the defendant consented to the delivery of this letter, but that is disputed by the defendant and his attorneys. It appears, however, that the contents of this letter were never revealed to either the judge or the attorneys for either side, and it is not shown by the record here what that letter really did contain. This kind of practice should never be permitted. The letter delivered to the juror may have been, and perhaps was, in good faith and concerning the juror's private and family affairs, but it might be equally true that it was concerning this case alone. Such a practice opens too wide a door for unfair methods, and is too liable to create in the minds of the parties to the action a feeling of uneasiness and suspicion which can easily be avoided. If a juror to whom such communication is directed is not willing for the trial judge in open court to open and read such letter and submit it to the attorneys for the respective parties before delivering to the juror, then it should not be delivered until the jury is discharged. Where such communications are permitted without the litigants knowing the contents, it is but natural for the defeated party to feel or suspect that the letter contained something which has prejudiced his rights. (*State v. McCormick,* 20 Wash. 94, 54 Pac. 764.)

The judgment is reversed, a new trial ordered, and the cause remanded.

Sullivan, C. J., and Stockslager, J., concur.