627 P.2d 782

**The STATE of Idaho,
Plaintiff-Respondent,**

v.

**Thomas William RANDOLPH, Jr.,
Defendant-Appellant.**

**No. 13060.**

Supreme Court of Idaho.

March 19, 1981.

Rehearing Denied May 26, 1981.

Michael E. Donnelly, of Skinner, Donnelly & Fawcett, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Timothy M. Walton, Deputy Attys. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

On August 13, 1977, police, acting pursuant to a search warrant, seized two boxes, containing approximately fifty pounds of marijuana, from the trunk of a car driven by appellant Randolph. Subsequently, Randolph was charged with possession of marijuana in violation of I.C. § 37–2732(e) and the matter was brought to jury trial.[1]

At the close of the state's case, Randolph moved for a judgment of acquittal based on the insufficiency of the evidence. This motion was denied. Randolph then rested without presenting any evidence.

After the jury retired to deliberate, the bailiff informed the trial judge that the jury wanted the use of a dictionary. The court denied this request and thereafter the bailiff advised the court that the jury had a question. The court instructed the bailiff to have the jurors write out their question and give it to the bailiff, who then was to give it to the court. At this time the court asked the bailiff if he knew the whereabouts of the defendant or his counsel, but the bailiff did not know. The court subsequently made the same inquiry of the reporter and the prosecutor's office. Neither knew, however, as the defendant's counsel had informed only the clerk's office where he could be found.

The trial judge and the prosecuting attorney then went to the judge's chambers where the judge received from the bailiff a sheet of paper with the following request written on it: "Please define control (right to control) as stated in instruction # 11." Instruction # 11, as given, had read:

"In this case, to warrant a verdict of guilty of POSSESSION OF MORE THAN THREE (3) OUNCES OF MARIJUANA, you must find from the evidence, beyond a reasonable doubt:

1. That on or about August 13, 1977

1. This appeal follows Randolph's second trial. His first trial ended in a mistrial when the jury was unable to reach a verdict.

2. In Twin Falls County, Idaho

3. The defendant, THOMAS WILLIAM RANDOLPH, JR.,

A. exercised control or had the right to exercise control over marijuana in an amount greater than three (3) ounces net weight;

B. had knowledge of its presence;

C. had knowledge that the substance was marijuana.

"These are the essential elements or material allegations of the crime of Possession of More Than Three (3) Ounces of Marijuana, and the State of Idaho is required to prove each of these elements beyond a reasonable doubt.

"Two or more persons may have joint illegal possession of marijuana if each has the right of control thereof, and each has knowledge of its presence and of its nature as marijuana."

The judge, after discussing the matter with the prosecuting attorney, personally typed the following reply on the same sheet of paper as received from the jury: "The phrase means—physical custody or the right to physical custody." The judge then gave this paper to the bailiff with directions to take it to the jury room, and to place it in the case file after the jury returned it. This was done.

The jury subsequently returned a verdict of guilty. Upon learning of the communications between the court and jury, Randolph filed motions for judgment notwithstanding the verdict, for mistrial, or, in the alternative, for a new trial. At the hearing on these motions, the trial judge acknowledged the impropriety of his conduct in so communicating with the jury in the absence of the defendant or defendant's counsel, but rejected an automatic presumption of prejudicial error and indicated that he would decline to grant any of the motions unless a showing of prejudice to the defendant caused by the communication was brought to the attention of the court. The trial judge then provided defendant's counsel with the opportunity to make objection and present a showing of prejudice. He stated:

"Now, I said I think the defendant should have an opportunity to object to the communication, that is, object in the sense that he explain to the Court, if he desires, why this particular communication prejudiced his client. That is what would have been done if counsel had been here, and through my failure to check with the clerk, or my failure to go further than I did go to find the defendant, he was prevented from this opportunity to object. If you want to object now and make your argument fine, if you wish time to consider it, that's fine.

. . . .

" . . . I'm talking about a valid objection, and a valid objection here, it seems to me, would be an objection based on the merits of the definition. If it's wrong, the definition, then it's wrong, and then the jury certainly has been improperly instructed."

Record, Vol. 2, pp. 11–12. After hearing arguments as made by the respective counsel, it was the order of the trial court that the motions be denied.

Randolph appeals from this denial, arguing that because of the very nature of the deliberating jury's request, the communication from the court necessarily may have had an effect on the jury, that he was thereby prejudiced and denied a fair and impartial trial, and that his conviction must therefore be reversed. The state submits that the trial court correctly ruled that Randolph had to show prejudice before a new trial could be granted and, *arguendo*, even if the communication created a presumption of prejudice, the definition of "control" as given was correct and thus rebuts the presumption.

The procedure to be followed in dealing with a jury request for a supplemental instruction in a criminal case is set forth in I.C. § 19-2204 as follows:

"After the jury have retired for deliberation, if there is any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into

court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel, or after they have been called."

This absolute proscription of communication between judge and jury except under provided conditions has been expanded upon by this Court's recent adoption of a four-step procedure to govern out-of-court judge-jury communications:

"To summarize: (1) It is for the losing party, in the first instance, to show that there was some communication off the record and not in open court. (2) The burden then shifts to the winning party to show what the communication was. If he cannot show what it was, the verdict must be set aside. (3) If he can show what the communication was but it appears to have been of such a character that it may have affected the jury, then the verdict must be set aside. (4) Only if it is made clearly to appear that the communication could not have had any effect, can the verdict be allowed to stand." (emphasis deleted).

*Rueth v. State*, 100 Idaho 203, 209, 596 P.2d 75, 81 (1978).[2]

Applying this four-step procedure, we note that there is no burden placed upon Randolph to show prejudice. Indeed, the burden has been shifted to the state. Accordingly, we note also that the first two steps of the procedure are not at issue here. Randolph has shown the improper communication and the state has shown definitely what the communication was. The question becomes whether the communication affected the jury. We hold that the state has clearly demonstrated that the communication did not affect the jury in any manner other than harmless, and therefore the verdict shall stand.

We are aware that the *Rueth* standard on its face precludes affirmation except where

it appears that the communication could not have had *any* effect on the jury. However, we do not find this to require literal application. Such literal application would result in a per se reversal for *all* such communications, an approach already rejected by this Court in *Rueth*: "A *per se* rule requiring reversal in all instances would appear to be unwise." *Id.* at 207, 596 P.2d at 79. We agree with the sentiments expressed by Chief Justice Traynor of the California Supreme Court that automatic reversal would engender "public disaffection with the judicial process" and is a lazy way of review which would "insidiously lower the standards of justice." R. Traynor, The Riddle of Harmless Error 35, 49 (1970). However, we do not simply pay lip service to the *Rueth* procedure and then tacitly discount it by our holding. Rather, we find that the application of *Rueth* must necessarily be tempered by countervailing considerations of this Court's appellate responsibility to determine whether the error below was harmless or prejudicial. Accordingly, in the instant case, we find that although it was error for the trial judge to provide as he did the definitional information, the error is not of sufficient gravity to warrant reversal. It is uncontroverted by the respondent that the information provided was a correct definition. The effect of this correct definition being before the jury under the facts of this case, we find not to be prejudicial. Differing circumstances, such as those found in *State v. Bland*, 9 Idaho 796, 76 P. 780 (1904), wherein the judge made a personal, off the record appearance in the jury room, or as found in *Rueth, supra*, wherein all written record of the communication was destroyed, would compel a reversal under an application of the *Rueth* four-step procedure. However, such circumstances are not present in the instant case. The record of the communication is clear. The information provided is correct. Under these circumstances, we find the error in transmission of that information to

---

2. Although *Rueth* is a civil case, it is applicable in the present criminal context. As we noted in *Rueth*, "there is no 'double standard that can be applied to the sanctity of a jury's delibera-tions based on criminal or civil process.'" 100 Idaho at 209 n.4, 596 P.2d at 81 n.4 (quoting *State Highway Commission v. Dunks*, 166 Mont. 239, 531 P.2d 1316, 1318 (1975).

**156**

be harmless error. There appearing no other incident of reversible error, we therefore affirm the decision of the district court.

BAKES, C. J., and McFADDEN, J., concur.

SHEPARD, J., concurs only in the result based on *Rueth·v. State, supra,* (Shepard, J., dissenting).

BISTLINE, Justice, dissenting.

Although a majority of the Court did not join in an opinion which I earlier authored in this case, it is gratifying indeed to observe that there are now four members of the Court adhering to the principles which were espoused in *Rueth.* Other than that the Court fails to comprehend the principles which were reaffirmed in *Rueth,* and here arrives at the wrong result, today's opinion is a commendable example of an appellate court's attempt to achieve a desirable consistency in decision law.

Some additional emphasis needs to be placed on the views of Judge Cunningham in regard to the remedying procedures he determined to employ. First, it must be noted that he was quick to recognize the impropriety of not conforming to the statutory provisions[1] and that he did not have

---

1. Judge Cunningham was at some length in detailing his perplexity to counsel:

    "If counsel will refer to 94 A.L.R. 271, they will find an exhaustive annotation regarding this specific question. I think it's fair to state that the general law is that it's improper for any communication to be had between the court and jury, either verbally or written communications in the absence of the defendant or defendant's counsel. There is even an annotation as to when a defendant and his counsel waives this right, some cases hold that they waive this right if they're not in the courtroom, but without any determination on my part as to whether or not the defendant and his counsel waived the right by their absence, I'll say that I think, and would find, that the conduct, as I have outlined, is improper. That there should not have been any communication between the court or the jury, either written or verbal.

    "The next question that comes, of course, is, is this sufficient to grant the motion for a new judgment, or motion for mistrial, or any of the motions that defendant has requested.

    "You can find about any shade, an nuances, answers to this question that you want to in this annotation. In short, the Court, having gone all over the parade ground, you can pick your favorite case and justify it. There are cases holding that harm and prejudice is presumed; there are cases holding that there is no such presumption. There are cases holding that it's up to the defendant to show, and to prove, by what weight of evidence I don't know, but to prove that there was prejudice.

    "This leads to a matter that has grated in my craw for quite sometime, and that is that in the past courts, particularly appellate courts, have spent a great deal more time considering the rules than they have on considering what effect the rules might have on a defendant. It's my candid opinion, while it's well to discuss theory, I think it should be well to discuss substance, so I guess what I'm saying, the court probably, including this court, spent a great deal more time talking about theory as distinguished from substance.

    "In this particular case, there's no question in my mind but what the defendant should be given the right to object to any communication, and I will shortly give the defendant that right. But, in this case, it seems to me that it takes an awful lot of presuming to presume that the communication, the question and answer, the manner in which it has been done, prejudiced the defendant in any way, so I don't accept the theory that the mere act itself presumes, for instance in this case I'm not going to require the defendant to prove that he was prejudiced, all I'm saying is I cannot see that it did prejudice him, not presumptive on its face, particularly in view of the facts which I have stated.

    "Now, I said I think the defendant should have an opportunity to object to the communication, that is, object in the sense that he explain to the Court, if he desires, why this particular communication prejudiced his client. That is what would have been done if counsel had been here, and through my failure to check with the clerk, or my failure to go further than I did go to find the defendant, he was prevented from this opportunity to object. If you want to object now and make your argument fine, if you wish time to consider it, that's fine. What are your thoughts? But, on the whole, as it sits right now, I would deny the motion, because as I say, I believe I would follow, and do follow that line of decisions found in this annotation which shows that under these facts there is no presumption that the defendant was prejudiced until there is such a presumption or some weight brought to the attention of the Court that he was prejudiced, I would deny the motion."

the benefit of the *Rueth* case, which had not then been handed down.[2]

Where I differ from the other members of the Court is in the understanding and application of steps 3 and 4 of the *Rueth* four-step procedure. In particular, our apparent disagreement narrows down to the situation where the communication is shown, as is so here, and the ensuing concern is *whether it appears to have been of such a character that it may have affected the jury.* Examples of mere technical errors in judge-jury communications readily coming to mind would include (and have been known to include): a note or verbal inquiry to the judge asking permission to call home; an inquiry from the foreman complaining of the heating system, or of the air conditioning; an inquiry as to dinner arrangements; an inquiry as to hours of deliberation; ad infinitum. Such communications, of course, "may affect" the jury in a sense of having some adverse or beneficial affect on some or all of the jurors, personally, but I would not expect any serious argument that "may affect the jury" has any such application in a personal context.

What that language is meant to apply to is communications which *may affect the jury in its deliberations.* Any contention to the contrary would be pure sophistry.

From that point one simply steps to the next. An instruction, in writing, sent from the trial court to the jury, comprised of twelve members who have taken an oath to follow the court's instructions, can hardly be said to be other than a communication of a character which *may have affected the jury in reaching its verdict.* More simply put, the test is whether the communication may have affected the jury verdict. And, the only answer is that an instruction to the jury as a matter of law is unarguably such a communication. It is exactly that classification of communication which specifically must not be given to the jury unless there is full compliance with I.C. § 19–2204:

"After the jury have retired for deliberation, if there is any disagreement between them as to the testimony, *or if they desire to be informed on any point of law* arising in the cause, they *must* require the officer to conduct them into court. Upon being brought into court, the information required *must* be given in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel, or after they have been called." (Emphasis added.)

Here, unlike *Rueth*, we deal with a known and preserved communication—but it isn't merely a communication, it is an instruction from the court as to the law, and furnished to the jury on a particular point whereon the jurors wanted further enlightenment. As a matter of law it cannot be said, as per step 4 of the four-step procedure, to have not had any effect.

That is exactly Randolph's contention. The state, on the other hand, has persuaded the Court that the instruction, although given to the jury after it had retired to deliberate, and given in violation of a statutory mandate designed to preserve the integrity of jury deliberations, was correct, and, that being so, where is the harm?

I submit that most practicing attorneys, even of little experience in the criminal trial field, will have little trouble in perceiving the fallaciousness of the state's argument and the Court's rationale.

It is not enough that, following such a violation as here occurred, defense counsel are given an after-the-fact opportunity to see the instruction, and attempt to demonstrate any error inherent therein. Nor will I put myself in that box and attempt to climb out, as counsel here avoided doing.

Perhaps the instruction, as far as it goes, is not incorrect. Is that the underlying principle of *Rueth*? Is that the end of appellate inquiry? I think not. Had the statute been complied with, defense counsel, for one thing, could have asked for and

**2.** I would surmise that Judge Cunningham would have granted a new trial on the basis of *Rueth*, had it been available.

been given time to furnish the court with additional clarifying instructions. For certain the instruction was not all that complete: In supplying the definition requested, the court wrote in terms which many trial lawyers would also find in need of defining, to-wit, "physical custody or the right to physical custody." "Physical custody" probably would present no problem. But what, exactly, is the *right* to physical custody?

And, it may well be asked, who for the state or who on the court can with absolute confidence assure Randolph that all of the jurors had the instruction read to them? There is both a probability and a possibility that one or more may have been attending to their physical needs, or simply were not interested. Such are not idle musings. There is a better way.

As stated in *United States v. Noble,* 155 F.2d 315, 318 (3d Cir. 1946):

"For not only are counsel and the defendant entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge, *but it is equally important to make as certain as may be that each member of the jury has actually received the instructions.* It is therefore essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant." (Emphasis added.)

In the case at bar, in the face of a wholly irregular proceeding we are inferentially asked to assume that the belated instruction was read to the jury, that all heard it, that all recognized it as an instruction of the court, and hence binding upon them. The procedure followed in the present case precluded defendant's ability to review the jury's request, comment on its propriety, suggest additional or alternative instructions, or have the entire jury further instructed in open court. *Most importantly,*

it *also precluded Randolph's counsel from arguing this instruction, with respect to the evidence and other given instructions.* As was noted in *Bland,* "[t]he law has its best observance and commands the highest respect where its sanctity and inviolability in all its provisions is uniformly recognized and enforced by the courts. *The interest of the people at large in maintaining its administration above reproach must always equal if not exceed the private or personal interest of any litigant."* (Emphasis added.) 9 Idaho at 805, 75 P. at 782–83. I.C. § 19–2204 is mandatory in its terms.

The state's main contention is that the communication was harmless in that the definition of control given by the court was correct. However, the rule as set forth in *Bland* and *Rueth* is inapposite, stating that such a communication can be harmless *only where it could not have had any effect on the verdict.* The issue in question is not whether the instruction was correct, but whether the communication may have affected the verdict. As stated by Chief Justice Traynor of the California Supreme Court, and quoted with approval in *Rueth,* "the judgment below is suspect whenever an error has occurred which is more than a 'mere technicality' and which affects a substantial right and 'unless the appellate court believes it highly probable that the error[3] did not affect the judgment, it should reverse.'" Traynor, The Riddle of Harmless Error 35 (1970), quoted at 100 Idaho at 208 n.2, 596 P.2d at 80 n.2. The type of communication that may be held harmless was addressed in *Rueth* as follows:

"[W]e should be reluctant to overturn the results of a lengthy trial *where the procedural violation amounts to a mere technicality,* or where it is clear that the procedural violation occurred *after* the jury had actually reached its verdict, or where the misconduct involved could in no way

---

**3.** The word "error" as here used applies to the erroneous or irregular procedure and not to whether the communication was itself an erroneous statement. Undoubtedly the other members of the Court mislead themselves into rationalizing that any error-free instruction sent

to the jury after it has retired to deliberate cannot be a prejudicial violation of I.C. § 19–2204 and the *Rueth* principle. I find this somewhat amazing, to say the least, observing that the precedential effect of the Court's opinion could well be devastating.

have prejudiced and may even have benefited the losing party." 100 Idaho at 207, 596 P.2d at 79 (emphasis added).

The communication in the present case cannot be said to amount to a mere technicality, nor can it be said that it could not have had any effect. This instruction went to the primary issue at trial, whether Randolph had possession or control of the marijuana. The fact that the jury requested this definition shows that they were concerned about whether Randolph had control, and, being given this definition, they resolved the issue against Randolph. In this regard the issue, although nearly identical to *Rueth*, is stronger in favor of reversal. There the court gave no further instructions, removing from contention any claim as to the accuracy of a belated instruction. Were we to have adopted in that case the state's theory now pushed upon us, we would have held that there was no error simply because the court did not further instruct. Since the improper communication here cannot be held to be harmless error, the judgment should be reversed.