69 P.3d 111

**STATE of Idaho, Plaintiff–Respondent– Cross Appellant,**

v.

**William E. McLESKEY, Jr., Defendant– Appellant–Cross Respondent.**

No. 29216.

Supreme Court of Idaho, Boise, April 2003 Term.

April 24, 2003.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

EISMANN, Justice.

This is an appeal from a conviction and sentence for the felony crimes of burglary and aggravated assault with a firearm. Because the district court instructed the jury that they could discuss the case among themselves during the trial, we vacate the judgment and remand this case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

During the early morning hours of May 30, 2000, Mrs. Hossley was awakened by the sound of a vehicle coming onto her and her husband's property. She awakened her husband, who hurriedly dressed, retrieved a pistol, and went outside to investigate. He saw a light coming from their barn and started walking towards it. The light in the barn went out, Mr. Hossley heard the barn door open and close, and then a firearm discharged in his direction. He dropped to his knees and fired four times towards the place from where the firearm had been discharged. Mr. Hossley immediately heard the sound of someone running from the barn into the nearby woods. At that time, someone turned on the engine and headlights of the pickup that had driven onto the Hossleys' property. Mr. Hossley walked over to the pickup and ordered the man inside to get out. He did. Mr. Hossley took that man to the house and told him to sit on the porch until the police arrived. Minutes later, William McLeskey, Jr., the Defendant, called from the direction of the Hossleys' garage, "Don't shoot. I'm coming out." He walked to the house, and Mr. Hossley ordered him to sit on the porch next to the other man. Mr. McLeskey had gunshot wounds to his back and left shoulder. After the police arrived to take custody of the two men, Mr. Hossley observed that a motorcycle and socket wrench set had been

removed from the barn, that the motorcycle was in the back of the intruders' pickup, and that the socket set was on the ground near the barn.

The State charged the Defendant with burglary and aggravated assault and alleged that he used a firearm to commit both crimes, which would enhance the maximum penalty for the crimes by increasing the maximum authorized period of incarceration by fifteen years. Prior to the commencement of the trial, the district court dismissed the firearm enhancement as to the burglary charge. At the beginning of the four-day jury trial, the district court gave the jury preliminary instructions, including telling them that they could discuss the case among themselves during the course of the trial. At the conclusion of the trial, the jury found the Defendant guilty of both charges. After he was sentenced, the Defendant timely appealed, and the State cross-appealed.

The appeal was initially heard by the Idaho Court of Appeals, which affirmed the conviction and sentence on the ground that the errors committed by the district court were harmless. We then granted the Defendant's petition for review.

## II. ISSUES ON APPEAL

A. Did the district court err by instructing the jury that they could discuss this case among themselves during the course of the trial?

B. Did the district court err in telling the prospective jurors during jury selection that most people charged with a crime are guilty?

C. Did the district court err by dismissing the firearm enhancement with respect to the burglary charge?

D. Did the district court correctly instruct the jury regarding the firearm enhancement?

## III. ANALYSIS

**A. Did the District Court Err by Instructing the Jury that They Could Discuss This Case Among Themselves During the Course of the Trial?**

At the beginning of the trial, the district court gave the jury several initial jury instructions, including one informing them that they could discuss the case among themselves during the trial. The relevant portion of that instruction was as follows:

Finally, it's important that, as jurors and officers of the court, you obey the following instructions at any time you leave the jury box, whether it be for recesses of the court during the day or when you leave the courtroom to go home at night.

First, do not talk about this case with anyone else during the course of the trial.

Next, in fairness to both sides, you should keep an open mind throughout the trial and not form or express any final opinions about the case while it is being presented. You may discuss this case among yourselves during the progress of the trial provided you understand the following conditions. And they are absolute. Number one, all discussions must take place in the jury room. Number two, all jurors and alternates must be present during such discussions. And, three, most important, you reach no final decisions on any contested questions, remembering that you're only making temporary assessments as the case progresses. You should only reach your final decision after you have heard all of the evidence, my final instructions and the final arguments, and it is submitted to you for your final decision.

Thereafter, whenever the jury left the courtroom, the district judge told them to "remember your admonition."

Idaho Code § 19–2127 (1997) provides as follows:

**Admonishment of jury on adjournments.**—The jury must also, at each adjournment of the court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them.

This statute, which was enacted in 1864, was obviously intended to protect the right of the

defendant to a fair trial. Since 1864, the order of trial has been that the prosecuting attorney offers evidence first and then the defendant has an opportunity to offer evidence. IDAHO CODE § 19–2101 (1997). There are several risks inherent in permitting jurors in a criminal case to discuss the case among themselves before it is submitted to them to reach a verdict. With the prosecuting attorney offering evidence first, the jurors may make up their minds before they have heard all of the evidence, or before they have received the final jury instructions and listened to the final arguments. The risk that the defendant may be denied a fair trial is not eliminated by the admonitions to "keep an open mind throughout the trial," to "reach no final decisions on any contested questions," to make only "temporary assessments as the case progresses," and to "reach your final decision after you have heard all of the evidence, my final instructions and the final arguments, and it is submitted to you for your final decision." Jurors who have announced their opinions regarding such "temporary assessments" may be less likely to change their minds in the face of evidence or argument that is contrary to their expressed opinions, or they may thereafter listen to the evidence with a view of confirming their previously-expressed opinions. The risk to the defendant's right to a fair trial is not necessarily eliminated by the admonition that the jurors make only temporary assessments of the issues as the trial progresses. Having come to a tentative opinion regarding an issue, jurors may then require the defendant to disprove that opinion, thereby shifting the burden of proof to the defendant.

The district court's instruction told the jurors to "reach no final decisions on any contested questions." Implicit in that instruction is permission to reach final decisions on uncontested questions. The district judge did not tell the jurors what questions were contested and what ones were uncontested. The district judge did not instruct the jurors on the elements of the crimes charged until after the close of the evidence. Although the prosecuting attorney made an opening statement detailing the evidence the state would present, the opening statement by defense counsel merely asked the jurors to keep an open mind until they had heard all of the evidence. With no guidance as to what was meant by "contested questions," the jurors might have reached final decisions regarding elements of the crime before the case was submitted to them at the end of the trial.

In addition to the above concerns, the district court's instruction required that the two alternate jurors be present and able to participate in these ongoing jury deliberations during the trial. This Court has previously affirmed the need to guard jury deliberations from input by persons other than the jurors to whom the case is submitted to reach a verdict. *State v. Bland,* 9 Idaho 796, 76 P. 780 (1904) (conviction reversed where, after jury had retired to reach its verdict, trial judge talked with one or more jurors in the absence of the defendant and his counsel). The district court's instruction in this case improperly permitted others, the alternate jurors, to participate in jury deliberations.

Even though the district court's instruction clearly violated Idaho Code § 19–2127, a statute designed to help guarantee the defendant's right to a fair trial, the State argues that such error should be disregarded because the Defendant did not object timely and has not shown that the error was prejudicial.

The State argues that the Defendant should not be entitled to challenge the giving of this instruction because he did not object timely in the trial court. Although the record does not reflect that the district court held a conference to give the parties an opportunity to object to any of the initial jury instructions, the court recessed the trial for the day and sent the jurors home immediately after giving those instructions. Thus, the Defendant could have objected before the jurors heard any evidence the following day.

When adopted in 1979, Idaho Criminal Rule 30 contained a provision stating: "No party may assign as error any portion of the cha[r]ge or omission therefore unless he objects thereto prior to the time the jury is cha[r]ged." The rule was amended the following year to delete that sentence. Ten years later in *State v. Smith,* 117 Idaho 225, 786 P.2d 1127 (1990), this Court held that as

a result of the 1980 amendment, it is not necessary in a criminal case to object to a jury instruction in order to preserve the right to challenge on appeal the giving of that instruction. The State asks us to either distinguish or overrule *State v. Smith.*

The State asks us to distinguish *State v. Smith* on the ground that the language deleted only required an objection to the "charge" given to the jury at the close of the evidence. Because the challenged initial instruction in this case was not part of the charge given at the close of the evidence, the State argues that *State v. Smith* does not apply.

As originally adopted in 1979, Idaho Criminal Rule 30 provided as follows:

> At the close of the evidence or at such earlier time as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. At the same time copies of such requested instructions shall be furnished to adverse parties. The court shall inform counsel of its proposed actions upon the requested instructions and shall allow counsel a reasonable time within which to examine and make objections outside the presence of the jury to such instructions or the failure to give requested instructions. Such instructions shall state distinctly the matter to which he objects and the grounds of his objections, which objections shall be made a part of the record. No party may assign as error any portion of the cha[r]ge or omission therefrom unless he objects thereto prior to the time that the jury is cha[r]ged. The court shall instruct the jury prior to final argument.

As originally adopted, Idaho Criminal Rule 30 did not distinguish between jury instructions given at the beginning of the trial and those given at the end. In fact, the opening sentence indicates that the rule contemplated that all jury instructions would generally be given at the close of the evidence, which had been the historical practice.[1] As written, the rule could not reasonably be interpreted to mean that it applied generally to jury instructions given both before and after the presentation of evidence while the sentence "No party may assign as error any portion of the cha[r]ge or omission therefrom unless he objects thereto prior to the time that the jury is cha[r]ged" was intended to apply only to jury instructions given at the close of evidence. The sentence applied to all jury instructions given.

If we will not distinguish *State v. Smith,* the State argues that we should overrule it. The reasoning of *State v. Smith* is sound, however. There is no other logical reason for the 1980 amendment to Rule 30 than to remove the requirement that a party must object in order to preserve on appeal any error in instructing the jury. What the State is really asking us to do is in this case amend Rule 30 to restore the sentence that was deleted in 1980. We decline to do so. Procedural rules in criminal cases that could affect substantive rights should be amended prospectively, not retroactively.

Finally, the State contends that the district court's action in permitting the jurors to deliberate during the course of the trial was harmless error. The State acknowledges that we must presume that the jurors, including the alternates, did in fact deliberate together during the course of the trial. The State argues, however, that we must also presume that the jurors kept open minds throughout the trial, as instructed, and that

---

1. Idaho Code § 19–2101, which was enacted in 1864, sets forth the order of a criminal trial. Under that statute, the judge's charge to the jury is the last event before the jury retires to deliberate. Idaho Code § 19–2102 provides that a court has discretion to deviate from that prescribed order only when the state of the pleadings requires it or when there are good reasons for doing so. In *State v. Spencer,* 74 Idaho 173, 258 P.2d 1147 (1953), the trial court instructed the jury at the beginning of the trial on the law of evidence, reasonable doubt, and credibility of witnesses. On appeal, the defendant argued that such conduct constituted reversible error. This Court held that it was error to have given the jury instructions at the beginning of the trial where there was nothing in the record justifying a departure from the statutory order. This Court held the error did not require reversal, however, because there was nothing showing that the defendant was prejudiced and the defendant had not timely objected to that procedure. In 2001, Rule 30 was amended to expressly acknowledge that jury instructions may be given both prior to the presentation of evidence and after the close of the evidence.

the error was therefore harmless absent a showing by the Defendant that he was deprived of his right to a fair trial.

■ Although the jurors' conduct in deliberating throughout the trial cannot be characterized as misconduct because they were following the district court's instruction, we have held that when there is juror misconduct the proper inquiry is whether prejudice reasonably could have occurred. *Leavitt v. Swain*, 133 Idaho 624, 991 P.2d 349 (1999); *Miller v. Haller*, 129 Idaho 345, 924 P.2d 607 (1996). We believe that same standard should apply here where the jurors, including the alternates, followed the district court's instruction to discuss the case among themselves during the course of the trial. Thus, the issue is whether prejudice reasonably could have occurred, not whether there is evidence showing that it actually did occur.[2] Considering the risks mentioned above, we hold that prejudice reasonably could have occurred. Therefore, the Defendant's convictions and sentence must be vacated and he must be granted a new trial.

**B. Did the District Court Err in Telling the Prospective Jurors During Jury Selection that Most People Charged with a Crime Are Guilty?**

■ During the jury selection process, the district court told the prospective jurors, "I'll be honest with you. Of course most of the people charged are guilty." After making the statement, the district court said, "There. I said it. Big secret. Well, guess what? It's not always the case." The district court then made additional statements intended to inform the jury that not everyone charged with a crime is guilty and that they should treat the Defendant the same way they would want to be treated if they were on trial. Because we are vacating the judgment on other grounds, we need not decide whether the district court's statement was reversible error in the context in which it was made. The trial court should certainly inform the jury that they should not infer or believe that the defendant must be guilty simply because he or she was charged with a crime. That is substantially different, however, from telling the jury that in the judge's opinion most people charged with a crime are guilty. Such a statement poses a substantial risk that the defendant would be denied a fair trial because the judge's subsequent comments attempting to put the statement in context may not erase from the juror's minds that in the judge's opinion most people charged with a crime are guilty.

**C. Did the District Court Err by Dismissing the Firearm Enhancement with Respect to the Burglary Charge?**

■ Idaho Code § 19-2520 provides that any person who "displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing or attempting to commit" any of certain specified crimes, including aggravated assault and burglary, shall be sentenced to an extended term of imprisonment computed by increasing the maximum authorized sentence by fifteen years. The State charged this firearm enhancement with respect to both the aggravated assault and burglary charges. Prior to the trial, the district court dismissed the firearm enhancement with respect to the burglary charge, relying upon Idaho Code § 19-2520E, which provides: "[A]ny person convicted of two (2) or more substantive

---

**2.** In this case, it would be virtually impossible for the Defendant to show actual prejudice. The prejudice to the Defendant would result from the mental processes of the jurors. Such evidence is not admissible, however, pursuant to Rule 606(b) of the Idaho Rules of Evidence, which provides as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or

indictment or concerning the juror's mental processes in connection therewith, nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

crimes ..., which crimes arose out of the same indivisible course of conduct, may only be subject to one (1) enhanced penalty." In doing so, the district court erred. That statute prohibits imposing more than one enhanced penalty where a person is convicted of two or more substantive crimes that arose out of the same indivisible course of conduct. It does not prohibit charging more than one enhanced penalty even if the crimes charged all arose out of the same indivisible course of conduct. If, in that circumstance, a defendant is convicted of more than one crime for which an enhanced penalty is charged, then at sentencing the court may only impose one enhanced penalty.

The Defendant argues on appeal that it was not error to dismiss the firearm enhancement with respect to the burglary charge because there was no evidence that he "displayed, used, threatened, or attempted to use a firearm ... while committing or attempting to commit" the burglary. Burglary is defined as follows: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, vehicle, trailer, airplane or railroad car, with intent to commit any theft or any felony, is guilty of burglary." IDAHO CODE § 18–1401 (1997). The Defendant asserts that the burglary was committed when he entered the barn with the intent to commit a theft and that there is no evidence that he displayed, used, threatened, or attempted to use a firearm while entering the barn.

We addressed a similar issue in *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1986), and *State v. Pratt*, 125 Idaho 546, 873 P.2d 800 (1993). In *State v. Fetterly*, the defendant and his girlfriend entered the victim's home with the intent to steal his personal belongings. They remained in the home until the following day when the victim returned. They ultimately killed the victim and took his car, pickup truck, and other personal items. The defendant was convicted of felony murder under a statute that provided: "Any murder committed in the perpetration of, or attempt to perpetrate, ... burglary ... is murder of the first degree." IDAHO CODE § 18–4003(d) (1997). On ap-

peal, he argued that he was erroneously convicted of felony murder because the burglary was complete before the victim arrived home. This Court rejected that argument, stating:

> As the state points out in its brief, "The narrow construction Fetterly urges upon the Court would deprive [the felony murder rule] of any validity unless the victim was killed while the burglar had one leg over the windowsill or one foot across the threshold." We agree with the state's position. Grammer's death was part of a stream of events which began the evening Fetterly and Windsor entered Grammer's home and ended the following day when Grammer's possessions were removed from the home.

109 Idaho at 771–72, 710 P.2d at 1207–08 (brackets in original).

In *State v. Pratt*, the defendant and his brother entered a residence to steal money and then committed a robbery and assaulted several people while in the residence, took a hostage to facilitate their escape when law enforcement officers arrived, led the officers on a car chase and then a foot chase, and finally engaged in a shoot-out with the pursuing officers, killing one of them. The defendant was convicted of felony murder of the officer on the ground that the murder occurred "in the perpetration of, or attempt to perpetrate" the burglary, robbery, and kidnapping. On appeal, the defendant argued that he was wrongly convicted of felony murder because the burglary, robbery, and kidnapping had occurred earlier at the residence and were completed before the killing of the pursuing officer. This Court rejected that argument, stating:

> In the present case, the trial court properly held that Brent Jacobson's death was also part of the stream of events which began when the Pratt brothers entered the residence of Louise Turner for the purpose of stealing money, were suddenly caught in the middle of the act by police officers, took a hostage to facilitate their escape, led the pursuing officers on a car and foot chase, and ended the following day when

the Pratts finally surrendered to the pursuing police officers.

125 Idaho at 558, 873 P.2d at 812.

Both *State v. Fetterly* and *State v. Pratt* were based upon the meaning of the phrase "in the perpetration of, or attempt to perpetrate." The word "perpetration" is synonymous with the word "commission," which means "the act of committing, performing, or doing (as a crime, misdeed, or other offense)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1684, 457 (Philip Babcock Gove ed., G. & C. Merriam Co.1971). The phrase "in the perpetration of" a crime in Idaho Code § 18–4003(d) is synonymous with the words "while committing" a crime in Idaho Code § 19–2520. In the instant case, there .was evidence that the Defendant discharged a firearm in the direction of Mr. Hossley while still on the Hossley's property and while attempting to escape from the scene of the burglary. Under those circumstances, there was evidence that the Defendant used a firearm while committing a burglary. *State v. Pratt*, 125 Idaho 546, 873 P.2d 800 (1993); *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1986). Therefore, the district court erred in dismissing the firearm enhancement in connection with the burglary charge.

### D. Did the District Court Correctly Instruct the Jury Regarding the Firearm Enhancement?

The Defendant contends on appeal that the district court erred by failing to properly submit the firearm enhancement to the jury. In its instruction regarding the offense of aggravated assault, the district court told the jury that the State must prove that the Defendant committed an assault "with a deadly weapon or instrument," which the court defined as "one likely to produce death or great bodily injury. Any firearm is a 'deadly weapon.' " That definition was consistent with the definition of a deadly weapon applicable to the crime of aggravated assault, which is: " 'Deadly weapon or instrument' as used in this chapter [Chapter 9 of Title 18] is defined to include any firearm, though unloaded or so defective that it can not be fired." IDAHO CODE § 18–905(d)

(1997). The aggravated assault statute does not define what a firearm is. The firearm enhancement statute does provide a definition for "firearm," however. It states: "For the purposes of this section, 'firearm' means any deadly weapon capable of ejecting or propelling one or more projectiles by the action of any explosive or combustible propellant, and includes unloaded firearms and firearms which are inoperable but which can readily be rendered operable." IDAHO CODE § 19–2520 (1997). These two statutes are obviously not identical. Under the aggravated assault statute, a deadly weapon includes a firearm that is "so defective that it can not be fired." Under the firearm enhancement statute, however, an inoperable firearm must be one "which can readily be rendered operable." Because the firearm enhancement statute increases the maximum penalty for the charged offense by fifteen years, the jury must find the facts that trigger the enhancement. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although the failure to instruct the jury on the definition of firearm under the firearm enhancement statute may have been harmless in this case, *see Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), on remand the district court should properly instruct the jury regarding the facts they must find under the firearm enhancement statute.

The Defendant raises other issues regarding his sentence, the denial of his motion under Rule 35 of the Idaho Criminal Rules to reduce his sentence, and the district court's decision to relinquish jurisdiction and not place him on probation after serving a period of retained jurisdiction. Because we have vacated the Defendant's sentence, we need not address those issues.

### IV. CONCLUSION

For the above reasons, we vacate the Defendant's sentence and judgment of conviction on both charges, and we remand this case for further proceedings consistent with this opinion. We also reverse the order dismissing the firearm enhancement charged in connection with the burglary charge.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS, and KIDWELL concur.